**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LORENZA SCARSI,

        Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

        Defendants.

Case No.: 1:26-cv-05508

Judge John J. Tharp, Jr.

Magistrate Judge Daniel P. McLaughlin

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER [20]**

Pursuant to minute entry order [20], Plaintiff submits this Supplemental Brief on whether the Hague Service Convention applies to this case. Plaintiff has investigated each of the eleven defendants identified on Amended Schedule A [13]. The investigation is described in the Declaration of Yanling Jiang ("Jiang Decl.").

Plaintiff respectfully submits that the Convention is inapplicable as to each of the eleven defendants on two independent grounds. First, Plaintiff possesses no registered Chinese-character legal name for any defendant, which forecloses Hague service through the PRC Central Authority as a matter of structural design — the practitioner-authority discipline that governs Hague-Request drafting establishes that a Request naming a defendant only by a Romanized or English-translated trade name "is assured to fail" and should not be submitted. Aaron Lukken, *Chinese company names, flawed addresses, and the high likelihood of Hague Service failure*, Hague Law Blog (Mar. 2024).[1] Second, the platform-disclosed address for each defendant cannot be verified to a serviceable location connected to the defendant after the diligence Plaintiff has performed.

---

[1] Available online at https://www.haguelawblog.com/2024/03/chinese-company-names-flawed-addresses-and-the-high-likelihood-of-hague-service-failure/ (last visited June 22, 2026).

1

Therefore, Plaintiff respectfully requests an order authorizing service by email under Federal Rule of Civil Procedure 4(f)(3) as to each defendant on Amended Schedule A.

## II. LEGAL STANDARD

In *Kangol LLC*, the Seventh Circuit held that the Hague Convention prohibits email service in China where the Convention applies, but the district court must first determine whether the Convention applies at all. 2026 WL 1502198, at *5–6 (7th Cir. May 29, 2026).

The Convention does not apply, however, "where the address of the person to be served with the document is not known." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 1, Nov. 15, 1965, 20 U.S.T. 361 ("Convention" or "Hague Convention"). The standard this district applies, cited approvingly by *Kangol*, 2026 WL 1502198, at *4, requires "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address." *NBA Props., Inc. v. P'ships and Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021). That standard is conjunctive. A plaintiff must not only ascertain a listed address but verify it, and "[b]are assertions regarding the reliability of Defendant's publicly available address are not a substitute for actual diligence." *NBA Props.*, 549 F. Supp. 3d at 796. Where a plaintiff investigates the platform-disclosed address and cannot confirm it as a real, usable location for service, the address is "not known" within Article 1. *Cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (deeming addresses not known where the plaintiff investigated online and confirmed through mail and in-person visits that the physical addresses were neither correct nor usable for service).

A second, independent feature of Article 1 concerns the identity of the party to be served. Under the law of the People's Republic of China, only a defendant's registered Chinese-character

2

legal name has legal status; the Romanized or English-translated trade name on a platform record is not the defendant's legal identity. The practitioner-authority discipline governing Hague-Request drafting follows from this: a Request that names a defendant only by a Romanized or English-translated form is, as Aaron Lukken puts it, "assured to fail," because the destination's local intermediate people's court, which executes the Request, cannot ascertain a Romanized identifier to a registered entity in the State Administration for Market Regulation registry. Lukken, *Chinese company names*, supra ("only the Chinese language name has any legal status; as a legal matter, the English is not relevant"; using a defendant's trade name on a summons and Hague Request is assured to fail if that's not the company's actual legal name).

Lukken's framework prescribes the diligence a plaintiff must complete *before* invoking the Convention: identify the registered Chinese-character legal name and the registered address of each defendant through Chinese-language registry and field investigation. Aaron Lukken, *A Hague-compliant roadmap for service on "Schedule A" defendants*, Hague Law Blog (July 2024).[2] Where the diligence cannot produce a registered Chinese-character name or registered address for a defendant, Lukken counsels against submission, observing that registry-validated addresses can still draw failure returns from the Central Authority because the local executing court cannot reconcile the platform-disclosed identifier with any registered entity at the address. Aaron Lukken, *Registered addresses…just as valuable over there as here*, Hague Law Blog (Oct. 2025).[3] The framework has been restated in the post-*Kangol* environment as the current state of

---

[2] Available online at https://www.haguelawblog.com/2024/07/a-hague-compliant-roadmap-for-service-on-schedule-a-defendants/ (last visited June 22, 2026).
[3] Available online at https://www.haguelawblog.com/2025/10/registered-addresses-just-as-valuable-over-there-as-here/ (last visited June 22, 2026).

practice. Aaron Lukken, *Hague Service on Schedule A defendants…simplified*, the Hague Law Blog (June 2026).[4]

### III. PLAINTIFF'S PER-DEFENDANT INVESTIGATION

The PRC State Administration for Market Regulation (国家市场监督管理总局, SAMR) requires four components in a registered entity's name: 行政区划 (administrative-region prefix), 字号 (distinctive trade-name component), 行业表述 (industry descriptor), and 组织形式 (orga-nizational-form suffix). Lukken, *Chinese company names*, *supra*.

Plaintiff's investigation, for each of the eleven defendants, comprises: (a) cataloging the platform-disclosed address on the Amended Schedule A; (b) verifying the address on Baidu Maps (百度地图), Amap (高德地图), and Google Maps;[5] (c) classifying the identifier by failure pattern under PRC corporate-naming law; and (d) assigning a service tier.

None of the eleven Defendants in this case is identified in Chinese characters, by any of the four components of a PRC registered entity name. Every defendant is identified on the plat-form record only by a Romanized pinyin identifier or an English-translated or English-fabricated name; no Chinese-character legal name appears for any defendant. Plaintiff's investigation iden-tifies five failure patterns under the four-element formula: Pattern A, run-together Romanized pinyin with trade-name and business-type components embedded but not separately legible, no

---

[4] Available online at https://www.haguelawblog.com/2026/06/hague-service-on-schedule-a-defendants-simplified/ (last visited June 22, 2026).

[5] Plaintiff has performed Chinese-language map verification for each of the 11 defendants on Baidu Maps (百度地图) and Amap (高德地图), the two PRC-native consumer map services with the most authoritative Chinese-lan-guage address coverage in the PRC market. Plaintiff does not rest its verification record on Google Maps, which has well-documented coverage gaps for PRC residential and rural addresses; Google Maps results are reported for com-pleteness only. Screenshots of the Baidu and Amap results for each defendant are on file and available for the Court's inspection.

city prefix, and no suffix (Def Nos. 1, 4); Pattern B, personal-name pinyin with arbitrary SEO or keyboard-mash suffix or prefix noise (Def Nos. 3, 6, 9, 10); Pattern C, bare personal-name pinyin with no other elements (Def Nos. 7, 11); Pattern D, trade-name pinyin appended to a province rather than a city of formation (Def. 5); and Pattern E, an English-translated or English-fabricated trade name with no plausible Chinese-character parent, matching Lukken's "assured of failure" archetype (Def Nos. 2, 8). The full per-defendant investigation record — platform identifier, platform-disclosed address, Baidu Maps / Amap / Google Maps verification result, naming pathology, and proposed service tier — is set out in Ex. A to the Jiang Decl. A summary navigation table follows.

| No. | Defendant | Tier | Proposed Service |
|---|---|---|---|
| 1 | HanFeiCanYinGuanLi | Tier 1 | Email / Rule 4(f)(3) |
| 2 | Hongxin Commerce and Trade | Tier 2 | Court's discretion (see § IV) |
| 3 | WangZhiChaows | Tier 1 | Email / Rule 4(f)(3) |
| 4 | zaoyangshiyifeifanbianlidian | Tier 1 | Email / Rule 4(f)(3) |
| 5 | JiaXuanHeNan | Tier 2 | Court's discretion (see § IV) |
| 6 | XiongYongQiangrtdg | Tier 1 | Email / Rule 4(f)(3) |
| 7 | WeiShuiYuan | Tier 2 | Court's discretion (see § IV) |
| 8 | Swiss Air Architectural Engineering | Tier 1 | Email / Rule 4(f)(3) |
| 9 | GongHuiYongjfk | Tier 1 | Email / Rule 4(f)(3) |
| 10 | ASDFdoupengfei | Tier 2 | Court's discretion (see § IV) |
| 11 | YANGSITONG | Tier 1 | Email / Rule 4(f)(3) |

## IV. ARTICLE 1 APPLICABILITY PER DEFENDANT

***A. The Hague Convention's Article 1 Does Not Apply Because the Platform Data Available to Plaintiff Does Not Identify Any Defendant in a Form Capable of Supporting Service (All 11 Defendants)***

Before reaching the per-defendant diligence analysis below, Plaintiff identifies one ground for Article 1 inapplicability that applies categorically across all eleven defendants: the data Plain-

tiff possesses is not a Hague-serviceable identity for any of them, and Lukken's discipline counsels against submission.

Lukken's framework establishes two pre-submission prerequisites for a Hague Service Convention Request capable of execution against a PRC defendant: (1) the defendant's registered Chinese-character legal name, in the four-element structure required by the PRC State Administration for Market Regulation (administrative region 行政区划; distinctive trade-name component 字号; industry descriptor 行业表述; organizational-form suffix 组织形式); and (2) a verifiable registered address corresponding to that named entity. Aaron Lukken, *Chinese company names* (Mar. 2024); Aaron Lukken, *A Hague-compliant roadmap for service on "Schedule A" defendants* (July 2024). Plaintiff has applied this discipline to the eleven Defendants and performed the diligence Lukken prescribes: (a) Chinese-character reconstruction of each defendant's Romanized or English-translated platform identifier; (b) Chinese-language searches of the Tianyancha[6] and Qichacha[7] PRC business-registry portals on a representative subset of defendants covering all identified name-failure patterns; (c) Chinese-language verification of each platform-disclosed address on Baidu Maps and Amap; (d) per-defendant decomposition of each platform identifier against Lukken's four required elements.

The diligence confirms a uniform result across the eleven defendants: no defendant produces a registered Chinese-character legal name on the platform record. Eight of the eleven Defendants are identified only by Romanized pinyin (Defendants 1, 3, 4, 5, 6, 7, 9, 10), one by English-translated trade name (Defendant 2), one by a wholly English-only fabricated name (Defendant 8), and one by Romanized pinyin where even the platform-disclosed address appears in Eng-

---

[6] An officially registered corporate credit information agency under the National Small and Medium-sized Enterprise Development Sub-Fund, available at https://www.tianyancha.com/ (last visited June 10, 2026).
[7] Nationwide Enterprise Credit Information Query System, available at https://www.qcc.com/ (last visited June 10, 2026).

lish only with no postal code (Defendant 11). The registry reconstruction subset produced no registered entity matching any reconstructed Chinese-character name at the platform-disclosed address. The platform record before this Court is, on Lukken's framework, the textbook pattern Lukken expressly identifies as "assured to fail" if submitted to the Central Authority — the precise pattern Lukken counsels not to submit.

Plaintiff has therefore declined to submit any Hague Service Convention Request to the Central Authority on the Defendants. Doing so would be facially deficient as a matter of practitioner-authority discipline, would not produce service capable of execution, and would not generate any reliable evidentiary record beyond what Plaintiff's own documented diligence already establishes. The Convention cannot be invoked with the information Plaintiff actually possesses. Article 1 makes the Convention inapplicable, and Rule 4(f)(3) email service is the available service mechanism.

Defendant Nos. 2 and 8 are the clearest instances of the problem: these are English-translated or English-fabricated trade names with no apparent Chinese-character parent, precisely the category Lukken identifies as presenting assured failure on a Hague Request. Defendant Nos. 2, 4, 5, 7, and 10 cover all five name-failure patterns identified above. For each, Plaintiff has attempted plausible Chinese-character reconstructions and run them through the Tianyancha and Qichacha PRC business-registry portals and Baidu/Amap map-verification tools.[8] For Defendant Nos. 4, 5, 7, and 10, the name-based search returned no registered entity after multiple plausible character reconstructions. For example, Defendant 4 — 怡飞凡 / 怡非凡 / 益飞凡; Defendant 5 — 嘉轩河南 / 佳轩河南; Defendants 7 and 10 — searches against the personal-name reconstruc-

---

[8] For the English-string input, Amap returned seven results, all unrelated retail storefronts in Beijing (six "New Balance" / "MOJO AVENUE" / "New BARLON" locations and one generic "new balance" entry); Amap parsed the English string as retail-brand keywords, not as an address. *See* Section IV.B (Defendant 11); Jiang Decl. Ex. D.

tions returned no individual-entrepreneur (个体工商户) registration; the address-based search returned no registered entity at the platform-disclosed address for any of the four; and Baidu Maps and Amap resolve the neighborhood, road, or community for each, but never the specific building or unit. As to Defendant No. 2, the name-based search across four plausible 字号 reconstructions (鸿鑫 / 红鑫 / 宏鑫 / 弘鑫) returned no match. The address-based search at the platform-disclosed location (湖北武汉市东西湖区二雅路10号) surfaced one registered entity — 武汉鸿鑫智达商贸有限公司, Unified Social Credit Code 91420112303381410H, status active (存续/在业). This registered entity's 字号 — 鸿鑫智达 — extends the platform identifier "Hongxin" by two characters and is not equivalent to any of the four reconstructions Plaintiff attempted. On the record before this Court, Plaintiff cannot confirm whether 武汉鸿鑫智达商贸有限公司 is the entity operating the Amazon storefront identified as "Hongxin Commerce and Trade" or an unrelated registrant at the same address. This finding reinforces rather than undermines the structural ground: even where a registered Chinese entity may exist at a platform-disclosed address, the platform identifier does not supply the registered Chinese-character name, and a Hague Request based on the platform record could not have correctly named the registrant. As to Defendant 4 specifically, the "住所申报" annotation on the platform record is a PRC commercial-registry notation indicating that the listed address is a declared-residence registration rather than an operational location. Because no registered entity surfaced at that address on the address-based search, Plaintiff cannot corroborate the annotation against an underlying registration record, and treats the platform-record annotation as the operative evidence for the Tier 1 analysis.

8

Plaintiff is candid that no published opinion squarely adopts this structural-ascertainment argument. It is anchored in practitioner authority — Lukken's framework as restated across four Hague Law Blog publications from March 2024 through June 2026 — and in the declarant's personal knowledge of PRC registry practice and judicial-execution conventions. Plaintiff presses this ground as an alternative and additional basis for Article 1 inapplicability, not as the sole basis. The defendant-specific diligence analysis discussed in Section IV.B provides an independent alternative basis under *NBA Properties*. Either ground — structural or diligence-based — independently supports the same disposition.

***B. The Hague Convention's Article 1 Does Not Apply to the Seven Defendants Because Their Platform-Disclosed Addresses Cannot Be Verified to a Serviceable Location (Tier 1 Defendant Nos. 1, 3, 4, 6, 8, 9, 11)***

No published opinion squarely addresses whether any of the address-pathology categories analyzed below — direction-based descriptors, the 住所申报 (registered-residence annotation), free-trade-zone registered addresses, or residential apartment units that resolve at neighborhood level but not at unit level — establishes an "unknown" address under Article 1. For each of these seven defendants, the platform-disclosed address falls into one of the patterns catalogued below. By analogy to the negative examples in practitioner authority, each pattern represents an address that cannot be verified to a serviceable, defendant-connected location. *See* Lukken, *Good, bad, or unknown addresses…and the Hague Service Convention*, *Hague Law Blog* (Aug. 2020)[9] (cataloguing mail-forwarding services, unreliable presence patterns, and outdated historical addresses as examples of addresses not "known" under Article 1).

**(1) Direction-based and village-only descriptors (Defendant Nos. 1, 3, 9, 11).**

---

[9] Available at https://www.haguelawblog.com/2020/08/good-bad-unknown-addresses-hague-service-convention/ (last visited June 22, 2026).

Each of these defendants' platform-disclosed addresses provides geographic context but no fixed building or unit identifier. Defendant 1's address, "400 meters east of the intersection of Jinwu Road and Sanzhong Street, road north, Nanmeng Village," identifies an area, not an addressable destination. Defendant 3's address, "200 meters south of the intersection of Hongyu Road and Changyi Road, west of road, No. 15-10," is a directional descriptor that does not resolve to a specific building on the record before this Court. Defendant 9's address, "Quanli Village Group 2, Louli Village Committee, Taqiao Town", identifies a rural village administrative group with no street address or building number. Defendant 11's address, "Wushu New Village, Jiangxia Avenue, Miaoshan High-tech Industrial Park" with no postal code, is an industrial-park area description in English with no building identifier. For Defendants 1, 3, and 9, Baidu Maps and Amap resolve the village, road, or surrounding area but do not identify a specific, addressable building. Google Maps likewise resolves only the neighborhood or area. A directional descriptor or a rural village-group identifier is functionally analogous to an unreliable presence pattern: it identifies an area, not a location that can be served. Defendant 11's English-only address presents a distinct and more fundamental failure.

**(2) English-only address unparseable on PRC-native map services (Defendant No. 11).**

As to Defendant 11 (YANGSITONG, SHEIN platform), the platform record discloses the address only in English: "Wushu New Village, Jiangxia Avenue, Miaoshan High-tech Industrial Park, Jiangxia Economic Development Zone, Jiangxia District, Wuhan City, Hubei Province, China." Plaintiff submitted that English string to each of Baidu Maps and Amap (高德地图). Baidu returned no result, zooming to a continent-scale view of Asia with no pins or candidates. Amap returned seven results, none at or near the platform-disclosed address. Every result was an

10

unrelated retail-brand storefront in Beijing, hundreds of miles from the disclosed Wuhan local-ity.[10] Amap parsed the English input as retail-brand keywords ("New Balance," "Avenue," "Mojo"), not as a place name.[11] The PRC-native service with the most authoritative Chinese-language address coverage in the PRC market cannot recognize the platform-disclosed string as an address at all. A Chinese-character reconstruction of the address (湖北省武汉市江夏区江夏经济开发区庙山高新技术产业园江夏大道邬树新村) does resolve on both services, but that reconstruction is Plaintiff's work product, not data on the platform record; the platform record itself contains no Chinese-character form of the address. The platform-disclosed identifier for Defendant 11 is therefore unparseable in the PRC's own address infrastructure, at the level of geographic recognition. Defendant 11 thus shows the structural ground of Section IV.A in operation: the platform record supplies no Chinese-character legal name and no Chinese-character address, and even the destination state's consumer map services cannot recognize the platform's disclosure.

**(3) Registered-residence and free-trade-zone registration (Defendant Nos. 4, 6).**

Defendant 4's platform-disclosed address bears the PRC commercial-registry annotation "住所申报"—literally "declared as residence"—a notation in PRC market-regulation practice indicating that the listed address is a registration artifact, not an operational location. The annotation is functionally analogous to a mail-forwarding registered address: the address may legally exist in registry records, but it does not identify a real operating location for the entity. Defendant 6's address bears the prefix "China (Sichuan) Pilot Free Trade Zone." PRC commercial-registra-

---

[10] Jiang Decl. ¶ 7 and Ex. B (China-associate diligence report dated June 8, 2026, reporting the per-defendant search trace — name-based and address-based Tianyancha/Qichacha queries, Baidu Maps and Amap verification, and internet-presence checks — for Defendants 2, 4, 5, 7, and 10).

[11] The seven Amap results returned for the English input were: New Balance (通州万象汇店); MOJO AVENUE (北京 DT01); MOJO AVENUE (北京); MOJO AVENUE (北京 SKP店); New BARLON (通州环球广场); New Balance (西单大悦城店); new balance (北京). *See* Jiang Decl. Ex. D.

11

tion services frequently use free-trade-zone addresses for entities that do not operate at the FTZ location; the FTZ designation is administrative, not geographic, and does not identify a service-able physical address. For Defendant 6, Baidu Maps and Amap resolve a building at No. 68 Guangchang Lane, but the FTZ-prefixed registration is itself the pathology: the address identifies an administrative paper-formation registration location, not a verified operating premises con-nectable to the storefront. Google Maps resolves the district for Defendant 4 but not the specific building listed. No published opinion squarely holds that a "住所申报" annotation or an FTZ-prefix registered address is "unknown" under Article 1; Lukken's mail-forwarding analogy sup-ports that result.

**(4) Business-name / address disconnect (Defendant No. 8).**

Defendant No. 8's platform-listed business name, "Swiss Air Architectural Engineering," bears no apparent relation to (a) the rural residential apartment in Pingshan County, Hebei (Run-jing Garden 5-2-103); (b) the listed product (a printed cigarette case); or (c) any actual aviation or architectural-engineering enterprise. This disconnect lacks the indicia of a real, connected busi-ness operation; the address cannot be verified on the record before this Court. Defendant 8 is also a Pattern E defendant: "Swiss Air Architectural Engineering" is an English-fabricated trade name with no plausible Chinese-character parent, matching Lukken's expressly-identified "assured of failure" archetype for a Hague Request.

The map-verification record for Defendant 8, the platform-disclosed address is 河北省石家庄市平山县平山镇正义路润景花园5-2-103 (Building 5, Unit 2, Apartment 103 of Runjing Garden, Pingshan Town, Pingshan County, Shijiazhuang, Hebei). Plaintiff submitted that address to each of Baidu Maps and Amap. Both services recognized the address as a standard PRC res-

idential format and resolved the Runjing Garden residential complex: Amap pinned the complex perimeter with a street-view inset of the development's gate, and Baidu surfaced the complex along with multiple property-listing pins drawn from its real-estate database. Neither service, however, independently pinned or otherwise verified the specific apartment 5-2-103. The deepest independent resolution either PRC-native service provides for this address is the complex. The platform-disclosed unit-level identifier ("5-2-103") is consistent with PRC residential address conventions, but is not, on the current record, independently verifiable below the complex level on either Baidu Maps or Amap. *See* Jiang Decl. Ex. D.

For each Tier 1 defendant, the platform-disclosed address has been ascertained but cannot be verified to a serviceable, defendant-connected location on the record before this Court. Plaintiff proposes email service under Rule 4(f)(3). Article 1's "address not known" carve-out applies; the Convention does not.

### C. The Hague Convention's Article 1 Does Not Apply to the Four Defendants Because the Structural Ground Applies Categorically, Even Where Their Platform-Disclosed Addresses Resolve Only to Neighborhood Level (Tier 2 Defendant Nos. 2, 5, 7, 10)

For the four Tier 2 defendants (Nos. 2, 5, 7, 10), the platform-disclosed address possesses some indicia of specificity — each consists of a discrete residential apartment unit number within a named residential community — but the specific building or apartment unit does not resolve on Chinese-language map services or on Google Maps. (See Section III table and Jiang Decl. ¶¶ 4–9.) Plaintiff is candid with the Court that Tier 2 presents a closer per-defendant verify-prong question than Tier 1: map-resolution failure on a discrete residential unit, standing alone, is not a doctrinal acid test for "address unknown" under Article 1, and rural and outlying PRC residential addresses often fail to resolve at building-level precision on Western and Chinese-language map services even where the building exists.

13

Plaintiff respectfully submits, however, that the structural ground established in Section IV.A independently resolves the Tier 2 defendants, and the Court therefore need not resolve the closer address-verification question as to them on this record. The four Tier 2 defendants are identified by, respectively, an English-translated trade name (Defendant 2), Romanized pinyin appended to a province name rather than a city of formation (Defendant 5), bare Romanized pinyin (Defendant 7), and Romanized pinyin with a keyboard-mash prefix (Defendant 10). None decomposes into the four-element Chinese-character structure Lukken's framework prescribes. (See Section III; Jiang Decl. ¶¶ 5–7.) Plaintiff's registry-reconstruction efforts on the priority subset (which includes Defendant Nos. 2, 5, 7, and 10) produced no registered entity at the platform-disclosed address matching any reconstructed Chinese-character name. The structural defect Section IV.A describes is therefore present as to each of the four Tier 2 defendants; the Convention is inapplicable; Rule 4(f)(3) email service is available.

Plaintiff has considered and respectfully declines to pursue further pre-ruling investigation as to the Tier 2 defendants. The registry-reconstruction efforts and Chinese-language map verification set out above are the diligence steps Lukken's framework prescribes for the Article 1 question Plaintiff invites the Court to decide. Physical-verification attempts (mail, food-delivery, in-person) at the platform-disclosed addresses would not produce evidence the Court does not already have; on the contrary, recent matter experience indicates that physical-attempt diligence is structurally asymmetric — a "we could not find it" record can be rebutted by a defendant who later produces a successful delivery to the same address. *Cf. Jantz & Jantz v. Veelam*, 26-cv-00601 (N.D. Ill.) (Kennelly, J.). In the alternative, if the Court determines that further investigation or Central Authority service is appropriate as to any Tier 2 defendant before ruling, Plaintiff is prepared to undertake (a) extended Chinese-character reconstruction work on the remaining Tier 1

14

defendants not in the priority subset, or (b) Hague Central Authority service through the PRC Ministry of Justice International Legal Cooperation Center as to any Tier 2 defendant the Court determines has cleared Lukken's pre-submission prerequisites — though Plaintiff's investigation indicates no such defendant exists on the present record.

## V. CONCLUSION

Plaintiff therefore respectfully requests an order authorizing service by email under Federal Rule of Civil Procedure 4(f)(3) as to each of the eleven defendants identified on Amended Schedule A [13], on either of two independent grounds:

1. **Structural ground (all eleven defendants).** The Hague Service Convention cannot be invoked with the data Plaintiff possesses, because no defendant produces a registered Chinese-character legal name on the platform record, and this submission is the pattern practitioner external authority identifies as "assured to fail." Therefore, Article 1 makes the Convention inapplicable.

2. **Per-defendant diligence ground.** For each defendant, the platform-disclosed address fails under the reasonable diligent efforts to ascertain and verify required by *NBA Properties, Inc. v. Partnerships and Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021).

In the alternative, if the Court determines that the Convention applies to any defendant on the present record, Plaintiff is prepared to undertake (a) extended Chinese-character reconstruction work on any defendant not previously included in the priority subset; or (b) Hague Central Authority service as to any defendant the Court determines has cleared the pre-submission prerequisites of practitioner-authority discipline (a registered Chinese-character legal name and verifiable registered address), within a reasonable period set by the Court.

DATED: June 22, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**

16